# EXHIBIT A

EXHIBIT A

# CONFIDENTIAL RELEASE AND SETTLEMENT AGREEMENT

1. **Release and Discharge**

Subject to Bankruptcy Court approval (in the Chapter 7 Bankruptcy case of Shelly Kelmer, Case No.: 23-13565-pmm, Eastern District of Pennsylvania) Lynn E. Feldmann in her capacity as Chapter 7 Trustee for **SHELLY KELMER**, for the sole consideration of **Three Hundred and Twenty Thousand Dollars ($320,000.00)**, to be paid within **30** days of execution of this Agreement and approval by the Bankruptcy Court by agreement of the parties regardless of any potentially applicable statutes or regulations, does hereby and for its agents, employees, servants, officers, directors, stockholders, successors, assigns, parent, and related and affiliated companies, release and forever discharge ▇▇▇▇▇▇▇▇▇▇▇▇▇ **VESSEL(S)** '▇▇▇▇▇▇▇▇▇▇'; its masters, officers, crew members, and any other person or entity that has been or could be claimed liable, and their agents, employees, servants, officers, directors, stockholders, successors, assigns, parent, and related and affiliated companies, and all other persons, firms, corporations, associations or partnerships and ▇▇ **Insurance Company** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and its insurer, and their agents, employees, representatives, servants, officers, directors, stockholders, re-insurers, parent, and related and affiliated companies, successors, and assigns and any other insurers, (collectively "**Releasees**") of and from any and all claims, actions, causes of action, demands, rights, damages, costs, expenses and compensation whatsoever as a result of an event which occurred on or about **February 9, 2023,** involving an injury allegedly caused by a defective chair at ▇▇▇▇▇▇▇▇▇▇, Bahamas. This release specifically excludes: any of the parties or insurance companies, including all agents and assigns whatsoever, who are part of the Pennsylvania litigation (Case Caption: KELMER VS BAYADA HOME HEALTH ET AL., Case No.: 231100473, Philadelphia, Pennsylvania) involving allegations of medical negligence that occurred after the injuries that are the subject of this release and the Bankruptcy Action (Chapter 7 Bankruptcy of Shelly Kelmer, Case No.: 23-13565-pmm, Eastern District of Pennsylvania).

2. **Compromise**

This Agreement and the payment of any sum of money in consideration for the execution of this Agreement is the result of a compromise among the parties of a doubtful and disputed claim and shall not be considered as an admission of liability and/or responsibility on the part of any parties released, each of which deny such liability and disclaim such responsibility.

3. **Potential Future Claims and Liens**

**SHELLY KELMER** ("**Releasor**") hereby releases any future losses that may arise from the matter described. It is understood and agreed that the undersigned relies wholly upon her own judgment, belief and knowledge of the nature, extent, effect and duration of any



damages and liability therefore and this release is made without reliance upon any statement or representation of the **Releasee** or their representatives. **Releasor** further agrees to fully satisfy any liens or interests of third parties asserted related to this matter and hold **Releasee** harmless from any such liability.

### 4. Indemnity

**Releasor** additionally hereby acknowledge and confirm that payment constitutes **Releasees'** proportionate share of the alleged damages in this matter.

**Releasor** further agrees to indemnify, defend, and hold harmless each **Releasee** from and against any and all claims or suits brought by any other person or entity (including but not limited to any co-defendant in the subject lawsuit referenced above), including but not limited to claims for contribution and/or indemnification, which in any way arise from, relate to, or are a consequence of the incident involving an injury allegedly caused by a defective chair at █████████████████████

### 5. Medicare

#### A. Medicare Beneficiary or Potential Medicare Beneficiary Responsibilities

This Release and Settlement Agreement is based upon a good-faith determination of the parties to resolve a disputed claim. The parties have attempted to resolve this matter in compliance with both state and federal law. The parties have made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms. The parties have not attempted to shift responsibility of medical treatment to Medicare pursuant to 42 U.S.C. Sec. 1395y (b). The **Releasor** acknowledges her duty to cooperate with **Releasee** in order to allow the Responsible Reporting Entity(ies) to fulfill its obligations to comply with Section 111 and agrees to provide **Releasee** with any and all information necessary for compliance with Section 111 of the MMSEA. Medicare shall include privately administered supplemental Medicare plans such as Medicare Advantage Plans.

**Releasor** further agrees to fully satisfy any Medicare liens or related interests of third parties related to this matter and hold **Releasee** harmless from any such liability.

**Releasor** represents and warrants that all bills, costs, or liens resulting from or arising out of **Releasor's** alleged injuries, or any lawsuit or occurrence are **Releasor's** responsibility to pay. **Releasor** agrees to assume responsibility for satisfaction of any and all rights to payment, claims or liens, or any kind, that arise from or are related to payments made or services provided to **Releasor**, or on such **Releasor's** behalf, and expenses, costs or fees incurred in connection with the claims asserted by **Releasor** related to **Releasor's** alleged injuries, or any lawsuit or occurrence including without limitation, all subrogation claims, liens, or other rights to payment, relating to medical treatment or lost wages that

have been or may be asserted by any health care provider, insurer, governmental entity, employer, or other person entity.

### B.    Indemnity of Releasee

**Releasor** will indemnify, defend and hold **Releasee** harmless from any and all such claims, liens, and rights to payment, known or unknown. Specifically, if any governmental entity, or anyone acting on behalf of any governmental entity, seeks multiple damages, including double damages, or other damages from **Releasee** relating to payment such governmental entity, relating to **Releasor's** alleged injuries, **Releasor** will indemnity **Releasee** for, and hold the Releasee harmless from any and all such damages, claims, and rights to payment, including any attorneys' fees, sought by such entities.

### C.    Notices, Reporting and Conditional Payments

**Releasor** agrees to provide **Releasee** with copies of all letters or other written correspondence from **Releasor or Releasor's** counsel notifying CMS or any other governmental entity that **Releasor's** claims or lawsuit has/have settled and with copies of correspondence from and to CMS or the Benefits Coordination & Recovery Center ("BCRC") relating to Medicare Conditional Payments made by Medicare associated with **Releasor's** injuries and/or treatment.

Once the terms of this settlement are finalized, **Releasor** or **Releasor's** counsel will deliver to **Releasee** a Final Determination letter issued by CMS or the BCRC and proof of satisfaction of all Medicare Conditional Payments, within 5 days of the final demand being issued. If **Releasor** is unable to comply with said requirement, **Releasor** or **Releasor's** counsel will withhold from the settlement monies in an amount sufficient to satisfy any potential Medicare Conditional Payments related to **Releasor's** injuries and/or treatment. The monies so withheld will be used solely for the purpose of satisfying any Medicare Conditional Payments, until all such liens and Medicare Conditional Payments have been satisfied.

### D.    Future Medical Expenses

As to future medical payments, **Releasor** and **Releasor's** counsel agree that it is the **Releasor's** sole and continuing responsibility to maintain an accounting of all medical expenses relating the injuries that are the subject of this Agreement and sufficiently set aside and administer such funds for future medical expenses to protect Medicare's interests against future payments for medical expenses relating to accident the injuries that are the subject of this Release and Settlement Agreement.

### 6. Prevailing Party Costs

The Parties stipulate that the consideration stated above pursuant to this Release and Settlement Agreement includes all sums that **Releasor** is or could be entitled to recover as costs, including attorney's fees related to this matter. The Parties further stipulate that

**Releasor** will not seek any award of costs including attorneys' fees from **Releasee** and that **Releasor** hereby releases and dismisses with prejudice any and all rights to such an award related to this matter.

### 7. Other Recoveries and Assignment

**Releasor** assigns to **Releasee** any and all claims against any third party up to the full amount paid as consideration for this release and agrees to cooperate in any recovery efforts undertaken by **Releasee**.

### 8. Warranty of Capacity to Execute Agreement and Acknowledgment of Comprehension

**Releasor** warrants that no other person or entity has any interest in the claims referred to in this Agreement, and that she has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or cause of action referred to in this Release and Settlement Agreement, and that the person executing this Agreement has the capacity to do so. **Releasor** acknowledges that she has read this release and understand(s) its contents.

### 9. Confidentiality

The terms and conditions of this settlement and Release are strictly confidential. Releasor agrees to keep confidential the allegations at issue, and all facts and circumstances relating to the Incident. As part of the terms of said settlement and Release, Releasor agrees from this date forward never to disclose, or cause to be disclosed, the amount of this settlement nor the facts relating to this case to anyone, including, but not limited to, any member of the press or public media, any social networking site or other electronic media, or other person or entity, who could reasonably be anticipated to cause said information to be disseminated to the public, nor to mention the names of any of Releasees in conjunction with the incident which is the subject of this Release. Releasor agrees that she will not take any action to interfere with, harm or injure the business, goodwill, name, or reputation of the Releasees, including but not limited to, agreeing to not communicate negative or disparaging comments to third parties. However, nothing contained herein shall interfere with the Parties' obligation to testify truthfully in response to a valid subpoena issued by a state or federal court or governmental agency or to cooperate fully in any investigation conducted by any governmental agency or maritime authority. Further, nothing herein shall preclude Releasor from discussing the terms and amounts of this settlement in a confidential setting in relation to the pending bankruptcy proceedings as referenced herein, with any financial, legal, or medical advisor for the sole purpose of obtaining financial, legal, or medical advice or to discuss resolution of a lien or as required to obtain Bankruptcy Court approval of this settlement including the contents of the subject release and in furtherance of the Pennsylvania litigation (Case Caption: KELMER VS BAYADA HOME HEALTH ET AL., Case No.: 231100473, Philadelphia, Pennsylvania) involving allegations of medical negligence that occurred after the injuries that are the subject of this release and the Bankruptcy Action (Chapter

7 Bankruptcy of Shelly Kelmer, Case No.: 23-13565-pmm, Eastern District of Pennsylvania) and/or as required by law, court order, governmental authority or insurance agreement. Violation of this paragraph shall constitute a breach of the Release and settlement agreement between the Parties.

The Parties to this agreement represent and acknowledge that the settlement amount received arises from tort or tort-type rights and that no portion of the settlement amount in this agreement represents consideration or payment for anything other than personal injuries or sickness; and further, the Parties represent and acknowledge that the sole consideration for the mutual promise of the Parties to maintain confidentiality of the settlement amount of this agreement is each other's reciprocal promise to do so.

### 10. Governing Law

This Release and Settlement Agreement shall be construed and interpreted in accordance with United States Maritime Law.

### 11. Additional Documents

All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

### 12. Entire Agreement and Severability.

This Release and Settlement Agreement incorporates the entire understanding among the parties relating to the subject matter hereof, recites the sole consideration for the promises exchanged and confirms, modifies or supersedes, as the case may be, all prior agreements between the parties as set forth herein. In negotiating this Release, no party has relied upon any representation, promise, inducement or agreement except those set forth herein. If any provision of this Agreement shall be unenforceable, the remainder of the Agreement shall remain fully enforceable and in effect. This Agreement constitutes the product of the negotiation of the parties hereto and the enforcement of this Agreement shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship of the Agreement.

**THIS IS A RELEASE!**         **CAUTION!**         **READ BEFORE SIGNING!**

**SIGNATURES FOLLOW**

**Releasor**

By: ___*Shelly Kelmer*___
SHELLY KELMER (as Releasor)

By: _____
LYNN E. FELDMANN (as Bankruptcy Trustee)

Dated: _____

## NOTARY PUBLIC ACKNOWLEDGMENT

STATE OF __PA__

COUNTY OF __Bucks__

On the __18th__ day of __January__ in the year __2025__ before me personally came __Shelly Kelmer__ to me known, who, being by me duly sworn, did depose and say that he/she/they reside(s) in __Levittown, PA__; and that he/she/they signed his/her/their name(s) thereto by authority of the board of directors of said corporation.

Notary Public: __Natalie Epstein__

Printed Name: __Natalie Epstein__

My Commission Expires: __May 22, 2027__

Commonwealth of Pennsylvania - Notary Seal
NATALIE EPSTEIN - Notary Public
Bucks County
My Commission Expires May 22, 2027
Commission Number 1348968

6